No. 24-50513

# In the United States Court of Appeals
## for the Fifth Circuit

DIGITALDESK, INCORPORATED; R. GREG GOMM,

*PLAINTIFFS-APPELLANTS*,

v.

BEXAR COUNTY, TEXAS; LIFTFUND, INCORPORATED,

*DEFENDANTS-APPELLEES*.

On Appeal from the United States District Court
Western District of Texas in No. 5:23-cv-886
The Honorable Jason Pulliam

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

RICHARD M. ESENBERG
DANIEL P. LENNINGTON
SKYLAR CROY
330 E. Kilbourn Ave.,
Suite 725
Milwaukee, WI 53202
Phone: (414) 727-9455
Facsimile: (414) 727-6385

Rick@will-law.org
Dan@will-law.org
Skylar@will-law.org

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Counsel for Plaintiffs-Appellants | Richard M. Esenberg<br>Dan P. Lennington<br>Skylar R. Croy<br>WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC.<br><br>Fernando M. Bustos<br>BUSTOS LAW FIRM, P.C. |
|---|---|
| Plaintiffs-Appellants | DigitalDesk, Inc. (which does not have any parent corporation or any publicly held corporation owning 10% of more of its stock)<br><br>R. Greg Gomm |

| Counsel for Defendants-Appellees | Marianne Nitsch<br>William Christian<br>GRAVES DOUGHERTY HEARON &<br>MOODY P.C.<br><br>Daniel McNeel Lane, Jr.<br>Michael William O'Donnell<br>Joshua McIntosh Taylor<br>NORTON ROSE FULBRIGHT US LLP |
|---|---|
| Defendants-Appellees | Bexar County, TX<br>LiftFund, Inc. |

s/ *Skylar Croy*

Skylar Croy
  *Attorney of Record for*
  *DigitalDesk, Inc. and R. Greg*
  *Gomm.*
WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

# STATEMENT REGARDING ORAL ARGUMENT

An oral argument is not necessary. This Court needs to do little more than apply *Moore v. U.S. Department of Agriculture ex rel. Farmers Home Administration*, 993 F.2d 1222 (5th Cir. 1993) or *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993).

# TABLE OF CONTENTS

INTRODUCTION.................................................................................9

JURISDICTIONAL STATEMENT .....................................................12

STATEMENT OF THE ISSUES...........................................................13

STATEMENT OF THE CASE ..............................................................13

    I.    Mr. Gomm learns about the program, including the
eligibility criteria, required documents, and timeline. ........13

    II.    Mr. Gomm applies on behalf of DigitalDesk. ......................17

    III.    LiftFund confirms receipt of the application and informs
Mr. Gomm that a LiftFund employee will reach out if
additional documents or information is needed. ..................19

    IV.    LiftFund rejects the application because DigitalDesk scored
too low.....................................................................................21

    V.    DigitalDesk and Mr. Gomm sue, and the District Court
dismisses the complaint for lack of standing without giving
DigitalDesk and Mr. Gomm an opportunity for limited
jurisdictional discovery. ........................................................21

SUMMARY OF THE ARGUMENT .....................................................25

STANDARD OF REVIEW....................................................................26

ARGUMENT ........................................................................................28

    I.    DigitalDesk and Mr. Gomm suffered a stigmatizing injury
when the Scoring Methodology was applied to the
application.............................................................................28

        A.    A stigmatizing injury is when a person experiences
discrimination or its effects. .......................................29

        B.    DigitalDesk and Mr. Gomm are victims of the Scoring
Methodology. ..............................................................31

        C.    The District Court erroneously conflated a stigmatizing
injury with an opportunity injury. ..............................33

II.    DigitalDesk and Mr. Gomm also suffered an opportunity injury because DigitalDesk was "able and ready" to apply but faced a discriminatory barrier. ........................................ 37

    A.    An opportunity injury occurs when someone is able and ready to apply for a government benefit but faces a discriminatory barrier. ................................................... 37

    B.    DigitalDesk and Mr. Gomm were able and ready to apply, at least by the close of the application period, so they suffered an opportunity injury. ........................... 40

    C.    The District Court misapplied the plausibility standard in concluding that DigitalDesk was not able and ready to apply. ........................................................................ 41

III.    At a minimum, DigitalDesk and Mr. Gomm should be permitted to engage in limited jurisdictional discovery. ....... 43

    A.    The actual eligibility criteria and required documents are not clear because they were described differently at different points in the process. .................................... 44

    B.    DigitalDesk was denied because of Mr. Gomm's race and gender, and they should be allowed to see the application file. ............................................................ 45

    C.    DigitalDesk and Mr. Gomm should be allowed to determine how similar applications were treated. ....... 46

CONCLUSION .......................................................................... 46

CERTIFICATE OF SERVICE .................................................. 47

CERTIFICATE OF COMPLIANCE ......................................... 48

# TABLE OF AUTHORITIES

## Cases

*Adarand Constructors, Inc. v. Pena*
  515 U.S. 200 (1995) ........................................................................38

*Clinton v. City of New York*
  524 U.S. 417 (1998) ........................................................................37

*Gratz v. Bollinger*
  539 U.S. 244 (2003) ........................................................................39

*Greer's Ranch Café v. Guzman*
  540 F. Supp. 3d 638 (N.D. Tex. 2021) ............................................44

*Heckler v. Matthews*
  465 U.S. 728 (1984) ..................................................................29, 32

*Int'l Bhd. of Teamsters v. United States*
  431 U.S. 324 (1977) ......................................................... 25, 34, 39

*Kmart Corp. v. Kroger Co.*
  963 F. Supp. 2d 605 (N.D. Miss. 2013) ..........................................27

*Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., Inc.*
  853 F.3d 173 (5th Cir. 2017) ..........................................................27

*Lane v. Halliburton*
  529 F.3d 548 (5th Cir. 2008) ..........................................................27

*Lawrence v. Texas*
  539 U.S. 558 (2003) ........................................................................36

*McCardell v. U.S. Dep't of Housing & Urban Dev.*
  794 F.3d 510 (5th Cir. 2015) ..........................................................31

*Moore v. U.S. Dep't of Agric. ex rel. Farmers Home Admin.*
  993 F.2d 1222 (5th Cir. 1993) ................................................. passim

*Ne. Fla. Ch. of Associated Gen. Contractors of Am. v. City of Jacksonville*
  508 U.S. 656 (1993) ............................................................... passim

*Powers v. Ohio*
　　499 U.S. 400 (1991) ............................................................. 29

*Ramming v. United States*
　　281 F.3d 158 (5th Cir. 2001) ........................................... 27

*Shaw v. Reno*
　　509 U.S. 630 (1993) ............................................................ 29

*Smith v. City of Cleveland Heights*
　　760 F.2d 720 (6th Cir. 1985) ........................................... 36

*Students for Fair Admissions, Inc. v. President and Fellows of Harv. Coll.*
　　600 U.S. 181 (2023) ................................................... 29, 32

*Time Warner Cable, Inc. v. Hudson*
　　667 F.3d 630 (5th Cir. 2012) ........................................... 38

*Vitolo v. Guzman*
　　999 F.3d 353 (6th Cir. 2021) ........................................... 38

*Walker v. City of Mesquite*
　　169 F.3d 973 (5th Cir. 1999) ................................ 11, 25, 29

**Statutes**

28 U.S.C. § 1291 ..................................................................... 12

28 U.S.C. § 1331 ..................................................................... 12

42 U.S.C. § 1981 ..................................................................... 12

42 U.S.C. § 1983 ..................................................................... 12

42 U.S.C. § 1985 ..................................................................... 12

**Other Authorities**

13A Fed. Prac. & Proc. Juris. § 3531.4 (3d ed. updated June 2024) ...... 11

20 Fed. Prac. & Proc. Deskbook § 17 (2d ed. updated April 2023) ......... 12

J.D. Vance, *Hillbilly Elegy* (2016) ........................................ 32

## INTRODUCTION

Bexar County and LiftFund Inc. employ a discriminatory "Scoring Methodology" when selecting among applicants for a small-business grant program. Below is a screenshot of their website, summarizing the methodology. ROA.14. As can be seen, applicants are not considered on a "first come, first serve" basis. Instead, each applicant is scored, and those with the most points get priority. Minority-owned businesses are doled out six points just because their owner is a minority. Women-owned businesses similarly get six points just because their owner is a woman.

**Scoring Methodology** —

Applications will not be considered on a first come, first served basis. Applications with the highest score based on the methodology below will be considered and funded first.

| Ownership | 18 Max Points |
|---|---|
| Veteran Owned | 6 |
| Women Owned | 6 |
| Minority Owned | 6 |
| Geography | 12 Max Points |
| Located in Unincorporated/Suburban City Business Location | 12 |
| Not Located in Unincorporated/Suburban City Business Location | 0 |

DigitalDesk applied to the program only to become a victim of the Scoring Methodology. Its owner, Mr. Gomm, is a white man. ROA.10. So, DigitalDesk received a low score—it was only eligible for 6/18 points in the ownership category. Resultantly, LiftFund, which administers the program on behalf of Bexar County, did not select DigitalDesk for a grant. ROA.12.

Neither Bexar County nor LiftFund disputes these facts, instead relying on a purported defect with the application that a LiftFund employee discovered after—not before—this action commenced. *See* ROA.88. For context, when Mr. Gomm applied, DigitalDesk had a signed IRS Form 1120 for tax year 2020. He uploaded that form—the "stated" form. ROA.153. A few days later—while the application period was still open—DigitalDesk's accountant made minimal changes and filed the form with the IRS—the "filed" form. ROA.153. Bexar County and LiftFund now say that LiftFund could have and would have denied the application for the lack of a "filed" form had it known about the purported defect earlier. Contrarily, LiftFund had informed Mr. Gomm twice that the application was complete and that someone would contact him if

LiftFund needed additional documents or information. ROA.152–53. No one ever did. ROA.153.

Bexar County and LiftFund filed a motion to dismiss for lack of standing. ROA.77. They argued that while neither of them was aware of the purported defect until this action commenced, they could have denied DigitalDesk's application for the IRS 1120 issue. So, they claim neither DigitalDesk nor Mr. Gomm has been injured.

The District Court granted the motion. ROA.228–48. Notably, DigitalDesk and Mr. Gomm had sought limited jurisdictional discovery, which a magistrate judge denied. The District Court faulted them for not seeking discovery, apparently unaware of the magistrate's ruling.

This Court should reverse the District Court's decision. DigitalDesk and Mr. Gomm have standing for two reasons. First, they suffered a "stigmatizing injury." *Walker v. City of Mesquite*, 169 F.3d 973, 979 (5th Cir. 1999) (quoted source omitted). Specifically, they are the victims of a Scoring Methodology grounded in stereotypes because the methodology was the actual reason DigitalDesk did not get a grant—not the IRS 1120 issue. Second, they suffered an "opportunity injury." *See* 13A Fed. Prac. & Proc. Juris. § 3531.4 (3d ed. updated June 2024). They were "able and

ready" to compete, at least by the close of the application period, but faced a discriminatory barrier. *See Ne. Fla. Ch. of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

## JURISDICTIONAL STATEMENT

This Court has "jurisdiction to determine jurisdiction." 20 Fed. Prac. & Proc. Deskbook § 17 (2d ed. updated April 2023). Although standing was disputed, the District Court had jurisdiction under 28 U.S.C. § 1331 because the claims arose under the United States Constitution and implementing statutes, including 42 U.S.C. §§ 1981, 1983, and 1985. The District Court erroneously concluded that neither DigitalDesk nor Mr. Gomm was injured, entering judgment on May 23, 2024. ROA.249. On June 21, 2024, they filed this timely appeal. ROA.250–51. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(1)    Whether DigitalDesk or Mr. Gomm suffered a stigmatizing injury when LiftFund scored DigitalDesk's application for a small-business grant lower because Mr. Gomm, its owner, is a white man.

(2)    Whether DigitalDesk or Mr. Gomm suffered an opportunity injury when DigitalDesk was able and ready to apply for a small-business grant—at least by the close of the application period—did apply, and then faced a discriminatory barrier because its owner, Mr. Gomm, is a white man.

(3)    Whether DigitalDesk and Mr. Gomm have shown at least one plausible set of facts that would confer standing such that they should be permitted to engage in limited jurisdictional discovery.

## STATEMENT OF THE CASE

Bexar County received $10 million in federal funds to create a grant program called the "Bexar County Small Business Assistance Program." ROA.11–12. The purported purpose of the program is to help businesses negatively affected by the COVID-19 pandemic. ROA.11. A business can receive a $10,000 to $50,000 grant to fund business-related expenses. ROA.11–12.

## I.   Mr. Gomm learns about the program, including the eligibility criteria, required documents, and timeline.

LiftFund began accepting applications on January 3, 2023, and Mr. Gomm learned of the program the day after. ROA.11, 152, 155–56.

13

Mr. Gomm received an email advertising the program (partially reproduced below), which informed him of the eligibility criteria for the first time. *See* ROA.152, 155–56. He realized that DigitalDesk satisfied the criteria listed in the email.

| **Eligibility Section of the Email** | **DigitalDesk's Ability to Satisfy the Eligibility Criteria** |
|---|---|
| **Eligibility**<br>• Meets SBA Definition of small businesses<br>• 2019 gross sales between $10,000 and $3 million<br>• Located in Bexar County<br>• Show a decrease in gross sales between 2019 and 2020 or 2019 and 2021<br>• Operating before January 1, 2020 and currently operating<br>• In good Standing with Texas Comptroller's Office<br>• Not be in a prohibited industry | (1) DigitalDesk meets the Small Business Administration standard;<br><br>(2) DigitalDesk had annual gross sales in 2019 between $10,000 and $3 million;<br><br>(3) DigitalDesk is located within Bexar County limits;<br><br>(4) DigitalDesk's gross sales in either 2020 or 2021 were less than gross sales in 2019;<br><br>(5) DigitalDesk operated before January 1, 2020, and is currently operating;<br><br>(6) DigitalDesk is in good standing with the Texas Comptroller's Office; and<br><br>(7) DigitalDesk does not operate within any prohibited industry. |

Mr. Gomm then reviewed the website listed at the bottom of the email. ROA.152. Below is a screenshot from that website describing the eligibility criteria differently than the email did. ROA.23. DigitalDesk was also able to satisfy the criteria as described on the website. ROA.12. Specifically:

(1)  DigitalDesk employs fewer than 500 employees and meets the Small Business Administration standard;

(2)  DigitalDesk does not conduct a prohibited activity, as defined by the program requirements;

(3)  DigitalDesk had annual gross sales in 2019 between $10,000 and $3 million;

(4)  DigitalDesk's gross sales in either 2020 or 2021 were less than gross sales in 2019;

(5)  DigitalDesk operated before January 1, 2020, with documented financials in 2019;

(6)  DigitalDesk is currently in operation;

(7)  DigitalDesk has not filed for bankruptcy;

(8)  DigitalDesk is in good standing with the Texas Comptroller's Office;

(9)  DigitalDesk is located within Bexar County limits;

(10)  DigitalDesk does not operate within any prohibited category of business; and

(11)  Mr. Gomm is a majority owner.

## Eligibility Section of the Website

**Eligibility**    —

To be eligible for this program, businesses must:

- Employ fewer than 500 employees and meet the **SBA size standard for small business**
- Not conduct a **prohibited business activity**.
- Annual gross sales in 2019 between $10,000 and $3 million
- Gross sales in *either* 2020 or 2021 must be less than gross sales in 2019. Gross sales are based on Line 1 of Schedule C or Line 1a of 1120, 1120S or 1065.
- Operating prior to January 1, 2020 with documented financials in 2019. "Operational" is defined as a positive amount of gross receipts or sales on the 2019 tax return (Line 1 of Schedule C or Line 1a of 1120, 1120S or 1065)
- Be currently in operation. "Currently operational" is defined as having positive business sales related deposits on the most recent business bank statement.
- Not have filed for bankruptcy at time of application
- Be in good standing with the TX Comptroller's office, if applicable.
- Be located within Bexar County limits. To check if your business address is located within the county, click **here**.
- Not be in the following categories: non-profits, gambling/gaming businesses, sexually oriented businesses; payday lenders, or real estate investment.
- Applicant must be majority owner of business

The email and website also informed Mr. Gomm of the required documents, as shown below. ROA.24, 155. The email did not distinguish between "stated" and "filed" forms, although the website. Mr. Gomm had all documents listed in the email and all on the website, except for a filed IRS Form 1120, including a current driver's license, business entity formation document, a business utility bill, business tax returns for 2019, 2020, and 2021, and a recent bank statement. ROA.12.

**Required Documents Section of the Email**



**List of Required Documents Section of the Website**



## II.    Mr. Gomm applies on behalf of DigitalDesk.

Mr. Gomm, on behalf of DigitalDesk, applied on January 6, 2023.

During the application process, Mr. Gomm had to submit various

financial information, recounting gross sales, as shown in the screenshot

below. ROA.96.

| Business Budget - do not enter cents. Please round to the nearest whole number |
| --- |
| 2019 |
| Gross Sales |
| 403739 |
| Net Profit/Loss |
| -57268 |
| 2020 |
| Gross Sales |
| 259655 |
| Net Profit/Loss |
| -223507 |
| 2021 |
| Gross Sales |
| 283132 |
| Net Profit/Loss |
| -148804 |

All the gross sales numbers—showing lower gross sales in both

2020 and 2021 compared to 2019—were supported by Mr. Gomm's

statements in the application and the attached documents. *See* ROA.106–

08.

At the time, DigitalDesk had completed, but not yet filed, an IRS

Form 1120 for the 2020 tax year. ROA.153. When applying, Mr. Gomm

uploaded a signed IRS Form 1120. ROA.153. DigitalDesk's accountant made minimal changes to the IRS Form 1120 and filed it with the IRS on January 13, 2023, before the application period closed. ROA.153. The next day, the IRS accepted the filed form. ROA.157–58. The IRS Form 1120 submitted with the application shows gross sales of $259,655, while the filed 1120 shows gross sales of $259,707 (a difference of $52). *Compare* ROA.107, *with* ROA.157. Both forms show a loss relative to gross sales in 2019, which were $403,740. ROA.106.

## III.  **LiftFund confirms receipt of the application and informs Mr. Gomm that a LiftFund employee will reach out if additional documents or information is needed.**

After Mr. Gomm applied, LiftFund emailed him, explaining, "[i]f any additional information is needed to assess your application, a LiftFund team member will contact you by email or phone." ROA.27.

The confirmation email was consistent with the "Program Timeline" section of the website, which Mr. Gomm had reviewed. ROA.152. Below is a screenshot of that section. ROA.25. Notably, under this section, LiftFund said that someone would "reach out" and give applicants "5 business days" to submit "additional documents or clarification" if "needed." ROA.25.

19

**Program Timeline**                                                    —

**Application Period: January 3 @ 10 am – January 20 @ 5 pm.**

Applicants will be able to save their progress during the application period. Applications must be completed and submitted along with all the documentation required for verification before 4:59:59 PM CST on Friday January 20, 2023.

Applicants will receive a confirmation email when they submit the application.

**Application review: January 30- May 1, 2023**

The grants team will reach out to applicants by phone or email if additional documents or clarification is needed. If additional documents are requested, applicants will have 5 business days to submit.

**Award notifications: March 30- June 30, 2023**

Eligible applicants with the highest scores based on the methodology above will be notified earlier within the award notification time frame, followed by lower scoring applicants. All applicants, even if ineligible or not selected for funding, will be notified by June 30.

Selected recipients will be notified of approval and prompted to accept the grant via an emailed DocuSign form.

**Grant disbursements: April 7– June 23, 2023**

Eligible applicants with the highest scores based on the methodology above will be funded earlier within the grant disburesement time frame, followed by lower scoring applicants.

No one ever reached out to Mr. Gomm. ROA.153. Given the confirmation email and website, he believed the application was complete. ROA.153. Notably, DigitalDesk had a filed IRS Form 1120 on January 13—a week before the application period closed—so Mr. Gomm could have provided it had anyone asked. ROA.153.

By the end of May, Mr. Gomm had not heard back, so, through counsel, he contacted Bexar County and LiftFund. ROA.28. He said that

the "Scoring Methodology" was illegal. ROA.29. No one responded. ROA.15.

## IV. LiftFund rejects the application because DigitalDesk scored too low.

In late June 2023, LiftFund emailed Mr. Gomm, informing him that DigitalDesk was not selected for a grant. ROA.15. LiftFund wrote, "[t]he grant application process was completed using the methodology outlined on the . . . **website** in the Scoring Methodology section." ROA.15. LiftFund did not say that DigitalDesk had been deemed ineligible or that Mr. Gomm had not submitted all required documents. ROA.15.

## V. DigitalDesk and Mr. Gomm sue, and the District Court dismisses the complaint for lack of standing without giving DigitalDesk and Mr. Gomm an opportunity for limited jurisdictional discovery.

In July 2023, DigitalDesk and Mr. Gomm filed this action, alleging the Scoring Methodology had been illegally employed to their detriment. ROA.9–19. The verified complaint explained that the application went to "the back of the line" because it had received a low score due to Mr. Gomm's race and gender. ROA.10.

Bexar County and LiftFund filed a motion to dismiss for lack of standing. ROA.77. They argued that LiftFund could have denied the

application over the IRS Form 1120 issue—but not that it actually did. ROA.79 ("Regardless of DigitalDesk's priority score[,] . . . DigitalDesk was not eligible to receive a grant.").

The motion was based on a declaration from a LiftFund employee, Liliane Spenle. ROA.89. Ms. Spenle did not discuss why DigitalDesk did not receive a grant. Instead, she explained that she had conducted a post-hoc review of the application after this action commenced and determined that DigitalDesk "would not be eligible" for a grant. ROA.89. In her words, "[Mr. Gomm] submitted what appear to be 'stated' tax returns for 2020 . . . ." ROA.89. Although "stated" returns were "acceptable" for 2021, she claimed they were not acceptable for 2020. ROA.89.

The District Court granted the motion. ROA.249. It concluded that neither DigitalDesk nor Mr. Gomm suffered a stigmatizing injury because "they were not denied equal treatment solely because of any membership in a disfavored group." ROA.241; *see also* ROA.237 (stating DigitalDesk was "deemed" ineligible). It also held that they were not "able and ready" to apply because DigitalDesk did not have a filed IRS Form 1120 when Mr. Gomm applied. ROA.242–44. While DigitalDesk

had one before the close of the application period, the Court concluded this fact was irrelevant. *See* ROA.243–44.

The District Court appeared to fault DigitalDesk and Mr. Gomm for not seeking jurisdictional discovery. ROA.232 ("While they never request jurisdictional discovery to bolster their position, they do contend, on three occasions, that discovery would provide an opportunity for further support for standing.").

At a pretrial conference, a magistrate judge recommended that DigitalDesk and Mr. Gomm pursue limited jurisdictional discovery. The magistrate appeared not to understand that the actual reason for the denial was not in dispute. "[T]here potentially [is] an issue of disputed fact around what the basis for the denial of this application was," he said. ROA.261. "Was it actually denied because of some procedural irregularity or shortcoming with respect to the 2020 tax return or whatever it was[,] or was it just denied for some other reason . . . [?]" ROA.261. He said that the District Court may want more information on this question. ROA.262.

As counsel for DigitalDesk and Mr. Gomm said, "I do not understand there to be a [factual] dispute[,] and I don't mean to speak for the defendants, so they can correct me if I'm wrong, I don't understand there to be a dispute about the actual reason for the denial." ROA.263. As counsel continued, "I believe that we are all on the same page that the denial was based on the [S]coring [M]ethodology . . . ." ROA.263. Counsel summarized "the question" raised by the motion to dismiss as "one of law . . . about the extent to which an after-the-fact post hoc justification can . . . serve as a way of defeating standing." ROA.263. Counsel for Bexar County and LiftFund both indicated their agreement. ROA.264–65.

The magistrate closed by suggesting that all counsel consider the need for limited jurisdictional discovery. Discovery was stayed pending a decision on the motion; however, the understanding at the time was that discovery could be reopened if counsel thought it might be helpful.

After the pretrial hearing, counsel for DigitalDesk and Mr. Gomm asked counsel for Bexar County and LiftFund to see the "application file." ROA.207. They rejected this request.

DigitalDesk and Mr. Gomm then filed a motion to lift the stay for limited jurisdictional discovery, primarily to clarify the actual reason for the denial. The magistrate judge denied motion. ROA.273–92.

## SUMMARY OF THE ARGUMENT

DigitalDesk and Mr. Gomm have standing for two independently sufficient reasons. First, when LiftFund applied the Scoring Methodology, DigitalDesk and Mr. Gomm suffered a "stigmatizing injury." *Walker*, 169 F.3d at 979 (quoted source omitted). In this Court's words, "[t]he badge of inequality and stigmatization conferred by racial [and gender] discrimination is a cognizable harm in and of itself providing grounds for standing." *Moore v. U.S. Dep't of Agric. ex rel. Farmers Home Admin.*, 993 F.2d 1222, 1224 (5th Cir. 1993). By analogy, if a black man were told, "you cannot eat at this restaurant—we don't serve blacks," no one would claim that the restaurant could escape liability by saying, "well, this man was also violating the dress code." Temporally, the injury occurs at the moment that the man is kicked out because of his race—regardless of whether other non-discriminatory reasons may have justified the same treatment. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) (explaining a black

man suffers an injury when he sees a "Whites Only" sign on the hiring-office door, regardless of whether he "ignored the sign" and applied for a job).

Second, DigitalDesk and Mr. Gomm suffered an opportunity injury because DigitalDesk was "able and ready" to apply yet faced a discriminatory barrier. *Ne. Fla.*, 508 U.S. at 666. DigitalDesk was eligible at least by the close of the application period, January 20 (if not sooner), because it had a filed IRS 1120 by January 13. Accordingly, had Mr. Gomm never applied and just gone straight to court, standing would be beyond reproach. A standing argument should not be weakened just because someone applied. Indeed, the opposite should seemingly be true.

At a minimum, DigitalDesk and Mr. Gomm deserve an opportunity for limited jurisdictional discovery. They should be allowed to investigate how the eligibility criteria worked in practice, to dispel any confusion about the actual reason for the denial, and to determine how other applications with similar deficiencies were treated.

## STANDARD OF REVIEW

This Court should independently determine whether DigitalDesk and Mr. Gomm have standing—the District Court is not entitled to any

deference. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Given the "particularly pernicious ramifications" of discrimination, DigitalDesk and Mr. Gomm are entitled to the benefit of the doubt. *See Moore*, 993 F.2d at 1223–24.

This Court need only "find a plausible set of facts" that would confer standing because this action is merely at the motion to dismiss stage—no discovery has occurred. *Lane*, 529 F.3d at 557; *Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., Inc.*, 853 F.3d 173, 178 (5th Cir. 2017) (referring to a "plausible set of facts"); *Ramming*, 281 F.3d at 161 ("[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."); *see also Kmart Corp. v. Kroger Co.*, 963 F. Supp. 2d 605, 609 (N.D. Miss. 2013) ("A court should grant the [factual attack] motion only if it seems certain that the plaintiff cannot prove any set of facts in support of his claim—

that would entitle him to relief."). If any such set exists, at a minimum, limited jurisdictional discovery is appropriate.

## ARGUMENT

DigitalDesk and Mr. Gomm suffered injuries, so they have standing to pursue claims against Bexar County and LiftFund. *See generally Ne. Fla.*, 508 U.S. at 666 n.5 (holding that in actions of this nature, "[i]t follows from our definition of 'injury in fact' that petitioner has sufficiently alleged both that the city's ordinance is the 'cause' of its injury and that a judicial decree directing the city to discontinue its program would 'redress' the injury").

Should this Court have doubts, it should at least remand with directions that DigitalDesk and Mr. Gomm be allowed to engage in limited jurisdictional discovery.

## I. DigitalDesk and Mr. Gomm suffered a stigmatizing injury when the Scoring Methodology was applied to the application.

DigitalDesk and Mr. Gomm suffered a stigmatizing injury. For this reason alone, they have standing.

### A.    *A stigmatizing injury is when a person experiences discrimination or its effects.*

A "stigmatizing injury" results when a person experiences discrimination or its effects. *See Walker*, 169 F.3d at 979 (quoted source omitted); *see also Powers v. Ohio*, 499 U.S. 400, 402 (1991) (explaining a criminal defendant "may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race[]" partly because "discrimination in the qualification or selection of jurors offends the dignity of persons"). When stereotypes are perpetuated, members of the disfavored group are implicitly (if not explicitly) deemed "less worthy participants in the political community." *Heckler v. Matthews*, 465 U.S. 728, 739 (1984) (quoted source omitted). Additionally, these stereotypes create in-and-out groups, raising "racial hostility." *Shaw v. Reno*, 509 U.S. 630, 643 (1993). Accordingly, when the government engages in affirmative action, it is obligated "to guard against" the "risk" that its classifications "devolve into 'illegitimate . . . sterotyp[ing].' " *Students for Fair Admissions, Inc. v. President and Fellows of Harv. Coll.*, 600 U.S. 181, 211 (2023) (quoted source omitted); *see also id.* at 220–21 ("[W]hen a university admits

students 'on the basis of race, it engages in the offensive and demeaning assumption that [students] of a particular race, because of their race, think alike' . . . . In doing so, the university furthers 'stereotypes that treat individuals as the product of their race . . . .' ") (quoted source omitted).

*Moore* is illustrative. 993 F.2d 1222. A husband and wife alleged that they were "denied the opportunity to participate in a sale of inventory farmland . . . because they were 'white.' " *Id.* A government agency had sent the couple a letter, which stated: "You have failed to provide proof that you meet the criteria . . . . (No Whites)." *Id.* The agency "high-handedly support[ed] dismissal on the basis of lack of justiciability, characterized as lack of standing or ripeness." *Id.* at 1223. The couple, it argued, "never filled out a complete . . . application, hence they could never have qualified for the . . . program." *Id.* At no point was the couple advised that their application was incomplete in any respect other than their decision not to indicate their race. *Id.* at 1223 n.2.

This Court emphasized that "[t]he badge of inequality and stigmatization conferred by racial discrimination is a cognizable harm in

and of itself providing grounds for standing." *Id.* at 1224 (citations omitted).

Accordingly, this Court rejected the agency's argument, rhetorically asking: "Who can fault" the couple for "forgetting some of the procedural details . . . in order to make their record for later administrative proceedings or a lawsuit?" *Id.* at 1223; *see also McCardell v. U.S. Dep't of Housing & Urban Dev.*, 794 F.3d 510, 519 (5th Cir. 2015) (holding a resident suffers a stigmatizing injury when he or she lives in a racially segregated neighborhood).

## B.     *DigitalDesk and Mr. Gomm are victims of the Scoring Methodology.*

In this action, DigitalDesk and Mr. Gomm suffered the kind of stigmatizing injury discussed in *Moore*. LiftFund even emailed Mr. Gomm that "[t]he grant application review process was completed using the methodology outlined on the . . . **website** in the Scoring Methodology section." ROA.31. The methodology awarded six points to "[m]inority owned" businesses and six points to "[w]omen owned" businesses, but DigitalDesk did not qualify as either because Mr. Gomm is a white man. ROA.24. Resultantly, DigitalDesk did not receive 12 of

30 points. No one ever suggested to Mr. Gomm that DigitalDesk was ineligible—only that DigitalDesk received a low score.

Accordingly, DigitalDesk and Mr. Gomm are victims of the Scoring Methodology. The methodology perpetuates stereotypes and sends a clear message: White men have it too good. This message was communicated when Mr. Gomm got the rejection email that said the methodology had been applied to the application (and did not say anything about eligibility or required documents).

Just like universities are prohibited from "operat[ing] their admissions program on the 'belief that minority students always (or even consistently) express some characteristic minority viewpoint,'" Bexar County and LiftFund are prohibited from operating the program on the belief that minorities always (or even consistently) are more needy or worthy than whites. *See SFFA*, 600 U.S. at 211 (quoted source omitted). *See generally* J.D. Vance, *Hillbilly Elegy* (2016) (biographing a white man's struggle with poverty). Whites are not immune from COVID-19, nor are white-owned businesses somehow disease-free areas. These businesses struggled during COVID-19, like many others. They are not "less worthy participants." *See Heckler*, 465 U.S. at 739.

### C.     The District Court erroneously conflated a stigmatizing injury with an opportunity injury.

The District Court, like Bexar County and LiftFund, misunderstood what a stigmatizing injury is. Its entire discussion of this issue was a single paragraph that did not cite any precedent: "Plaintiffs were ineligible for a grant based on a non-discriminatory requirement applicable to all applicants. Despite their allegations, they were not denied equal treatment solely because of any membership in a disfavored group. They failed to comply with an express eligibility requirement . . . ." ROA.241. At a minimum, the District Court should have addressed *Moore* because it was discussed extensively in the briefing.

As a preliminary matter, DigitalDesk and Mr. Gomm were, in fact, "denied equal treatment solely because of a[] membership in a disfavored group," contrary to what the District Court wrote. ROA.241.

The District Court appears to have meant that DigitalDesk and Mr. Gomm did not suffer a stigmatizing injury because, in its view, the application *could* have been rejected for a non-discriminatory reason, although it also suggested at one point that ineligibility was the actual

reason for the denial. *See* ROA.243 (saying LiftFund did not "pick[] winners and losers" based on race "with respect to Plaintiffs").

The District Court's reasoning is flawed because the stigmatizing injury is about the actual reason for the denial, not what LiftFund *could* have—but did not—do. Even Bexar County and LiftFund acknowledged below that "stigmatic injury 'accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.'" ROA.163 (quoted source omitted). DigitalDesk and Mr. Gomm were "personally denied equal treatment" because of the Scoring Methodology—not the IRS Form 1120 issue. As already alluded to, no one would say that a black man who is told he cannot eat at a restaurant because he is black has not experienced an injury, even if he was also violating the dress code. *See Int'l Bhd. of Teamsters*, 431 U.S. at 365. The actual reason that the man was kicked out matters considerably: Was it race or dress?

A timeline helps illustrate this point: (1) the application was submitted; (2) the race/gender Scoring Methodology was applied; (3) the application was rejected because it received a low score; then (4) the race/gender neutral eligibility criteria was checked. An eligibility criteria

34

check (at least a thorough one that caught the purported IRS 1120 issue) did not happen until after this action commenced—even though Bexar County and LiftFund received a demand letter. Such a check would likely never have happened but for this action. Like in *Moore*, "whether or not" Mr. Gomm completed an application, unless he was a minority, DigitalDesk would not have been considered on equal terms. 993 F.2d at 1224.

The injury occurred at the moment that the application was treated worse because of Mr. Gomm's race and gender, regardless of whether similar treatment could have been justified on a non-discriminatory ground. That moment is when the stereotype is applied, and racial hostility escalates. A later application of race-neutral criteria cannot un-ring that bell.

What LiftFund *could* have done might be relevant to an opportunity injury analysis (discussed next), but a stigmatizing injury is not the same as an opportunity injury. For example, maybe the black man who is told he cannot eat at a restaurant because he is black is not denied an opportunity if he is not wearing a shirt (although a question of fact is raised as to how the dress code is actually applied); however, no

reasonable person would say he is not a victim of discrimination. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 575 (2003) ("If protected conduct is made criminal and the law which does so remains unexamined for its substantive validity, its stigma might remain even if it were not enforceable as drawn for equal protection reasons. When homosexual conduct is made criminal . . . , that declaration in and of itself is an invitation to subject homosexual persons to discrimination both in the public and in the private spheres. The central holding of . . . [a precedent] has been brought in question by this case, and it should be addressed. Its continuance as precedent demeans the lives of homosexual persons."); *Smith v. City of Cleveland Heights*, 760 F.2d 720, 726–28 (6th Cir. 1985) (holding a black resident had standing to challenge a city's racial "steering" policies, which discouraged black home buyers away from the city, even though he was a resident and not a home buyer because the policies stigmatized him as a member of a group deemed undesirable).

The District Court conflated the two. It applied effectively the exact same test.

36

At bottom, this Court should reverse the District Court. In doing so, it should clarify the proper test for a stigmatizing injury.

## II. DigitalDesk and Mr. Gomm also suffered an opportunity injury because DigitalDesk was "able and ready" to apply but faced a discriminatory barrier.

Additionally, DigitalDesk and Mr. Gomm suffered an opportunity injury. This injury also provides an independent basis for standing.

### A. An opportunity injury occurs when someone is able and ready to apply for a government benefit but faces a discriminatory barrier.

As the United States Supreme Court has explained, in an equal protection action, "a party . . . need only demonstrate that it is able and ready" to participate in a government program but that a "discriminatory policy prevents it from doing so on an equal basis." *Ne. Fla.*, 508 U.S. at 666. Indeed, a plaintiff "need not [even] allege that he [or she] would have obtained the benefit but for the barrier in order to establish standing." *Id.* "The 'injury in fact' . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* (citation omitted); *see Clinton v. City of New York*, 524 U.S. 417, 433 n.22 (1998) (explaining "a denial of a benefit in the bargaining process can itself create an . . . injury, irrespective of the end

result") (citation omitted); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("Adarand's claim that the Government's use of subcontractor compensation clauses denies it equal protection of the laws of course alleges an invasion of a legally protected interest. . . . Adarand need not demonstrate that it has been, or will be, the low bidder on a Government contract."); *see also Vitolo v. Guzman*, 999 F.3d 353, 359 (6th Cir. 2021) (explaining an injury occurred when plaintiffs applied to a program and "the playing field" was unlevel regardless of whether "plaintiffs might not otherwise qualify for priority consideration"); *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012) ("[S]uch discrimination can constitute an injury because it positions similar parties unequally before the law; no further showing of suffering based on that unequal positioning is required for purposes of standing.") (quoted source omitted).

For example, in *Northeastern Florida*, plaintiffs challenged a racial preference "requir[ing] that 10% of the amount spent on city contracts be set aside each fiscal year for so-called 'Minority Business Enterprises.'" 508 U.S. at 658. The defendants argued that the plaintiffs had not demonstrated that any of their members "would have bid successfully"

for "any . . . contracts"—much like how Bexar County and LiftFund claim DigitalDesk and Mr. Gomm would not have received a grant even if the Scoring Methodology had been applied after the eligibility criteria. *See id.* at 660. The United States Supreme Court disagreed, holding that the plaintiffs had standing.

In fact, several precedents establish that a person need not even apply so long as he or she was able and ready. *Int'l Bhd. of Teamsters*, 431 U.S. at 365; *see also Gratz v. Bollinger*, 539 U.S. 244, 260–61 (2003) (explaining "whether" the plaintiff "actually applied" made no difference because the district court found he intended to apply if the discriminatory barrier ceased). A person need not subject himself or herself to a discriminatory process (thereby experiencing a stigmatizing injury) to have an opportunity injury.

**B.    *DigitalDesk and Mr. Gomm were able and ready to apply, at least by the close of the application period, so they suffered an opportunity injury.***

Under *Northeastern Florida*, DigitalDesk and Mr. Gomm have standing because DigitalDesk was "able and ready" to apply to a program that had a discriminatory barrier. 508 U.S. at 666.

DigitalDesk was able and ready, if not at the moment Mr. Gomm applied, then at least by the close of the application period. By then (if not before), DigitalDesk satisfied all eligibility criteria and had all required documents.

Ironically, had Mr. Gomm not applied, this appeal would likely not exist. DigitalDesk and Mr. Gomm would simply have alleged that they were able and ready to apply by the close of the application period, but a discriminatory barrier prevented them from competing on an equal basis. In fact, had someone from LiftFund reached out or had Mr. Gomm applied a few days later (when he had a filed IRS 1120), no evidence indicates that the application would have fared any better—because it would not have. The purported application defect is immaterial—indeed, trivial—just further illustrating it was not the reason for the denial. Under the circumstances, DigitalDesk and Mr. Gomm should have a

more robust, not weaker, standing argument, given that they actually applied.

### C. *The District Court misapplied the plausibility standard in concluding that DigitalDesk was not able and ready to apply.*

At this early stage of litigation, DigitalDesk and Mr. Gomm are only required to prove plausibility—not probability—and the District Court erred by concluding that they did not prove a plausible opportunity injury.

The Court first faulted Mr. Gomm, noting he "did nothing after filing . . . [the] deficient application to demonstrate that they were ready to apply or that they were in a position to compete equally with other applicants. Their submitted application still lacked a filed 2020 tax return. These failures remove Plaintiffs from the scope of applicants possessing standing . . . ." ROA.244.

In other words, Mr. Gomm's "inaction" means the resulting denial was his fault. Never mind that the failure to submit a filed IRS 1120 actually had nothing to do with his denial.

This theorizing has several problems, but the biggest is that it presumes DigitalDesk did not have a right to cure. The confirmation

email that Mr. Gomm received said that someone from LiftFund would reach out if any additional information was needed. No one ever did. The website similarly talked about a five-day cure period.

The District Court purported that "the program timeline makes clear that all documentation required for verification must be submitted prior to the close of the application period," i.e., the right to cure did not apply to tax returns, but the basis for this finding is wanting. ROA.238.

Nothing in the confirmation email or on the website about the cure period distinguishes between various kinds of documents, and why a LiftFund employee would reach out and ask for non-required documents is unclear. Put differently, what the District Court thought LiftFund employees were asking about and why is unclear.

Like in *Moore*, this Court has reason to question whether DigitalDesk would have been provided a chance to cure the purported application deficiency had Mr. Gomm been of a different race (or gender). Even if a perfect application had been submitted, no one contends that DigitalDesk would have received a grant.

### III. At a minimum, DigitalDesk and Mr. Gomm should be permitted to engage in limited jurisdictional discovery.

In summary, the District Court should have denied the motion to dismiss for lack of standing because multiple plausible sets of facts exist that give rise to standing. Accordingly, this action should have proceeded to at least limited jurisdictional discovery.

Each of the following is at least plausible:

- A filed IRS 1120 for 2020 was not, in actuality, treated as an eligibility criterion.

- DigitalDesk was, in actuality, denied a grant because it received a score that was too low—eligibility had nothing to do with it.

- Other applicants with similar purported defects were able to make use of the five-day cure period.

The magistrate judge erred in denying limited jurisdictional discovery on these issues. The District Court then codified that error and extended it by seemingly faulting DigitalDesk and Mr. Gomm for not seeking discovery. At a minimum, this Court should remand with directions that permit both sides to explore the standing issue.

43

### A.     The actual eligibility criteria and required documents are not clear because they were described differently at different points in the process.

As a preliminary matter, the eligibility criteria and required documents were described differently at different points. The January 4 email that first informed Mr. Gomm of the program did not mention "filed" tax returns. The "Eligibility" section of the website was also notably silent on this matter. Under that section, LiftFund did not state that submission of a filed IRS Form 1120 was necessary. ROA.23. LiftFund said: "Gross sales in *either* 2020 or 2021 must be less than gross sales in 2019. Gross sales are based on . . . Line 1a of 1120." ROA.23.

Additionally, Bexar County and LiftFund blur the distinction between an eligibility criterion—a decrease in gross sales—and documents necessary to verify that criterion is satisfied. *Cf. Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 647 (N.D. Tex. 2021) ("Defendants themselves seem to 'conflate *eligibility* to apply with when his application will be *processed* based on the prioritization scheme.' ").

Their sole reason for requiring the submission of an IRS Form 1120 was to look at one line item and use the provided information to verify that a business had "[g]ross sales in *either* 2020 or 2021" that were "less than gross sales in 2019." ROA.23. The submitted IRS Form 1120 and the filed IRS Form 1120 list nearly the same number—about a $50 difference—and both show a significant loss compared to gross sales in 2019. ROA.106–07, 153. Moreover, DigitalDesk's gross sales in 2021 were lower than in 2019. No one even questions that Mr. Gomm submitted all required documents for 2019 and 2021.

Against this backdrop, the purported problems with the submitted IRS Form 1120 that Bexar County and LiftFund point to make little sense. For example, they complain that the submitted IRS Form 1120 "use[s] a font type that is inconsistent with an IRS form." ROA.82. The difference in font is trivial and did not affect LiftFund's ability to verify eligibility.

### B. DigitalDesk was denied because of Mr. Gomm's race and gender, and they should be allowed to see the application file.

If there is any dispute on the matter, DigitalDesk and Mr. Gomm should at least be allowed to explore why the application was denied. No

harm will come from letting them see the application file. Neither Bexar County nor LiftFund will be burdened by this minimal request for production.

### C. *DigitalDesk and Mr. Gomm should be allowed to determine how similar applications were treated.*

Lastly, DigitalDesk and Mr. Gomm should be allowed to see how other applicants were treated. At least plausibly, some were given a chance to correct similar issues. The District Court said DigitalDesk and Mr. Gomm's argument on this matter was nothing more than "mere conjecture or speculation." ROA.239. Maybe at summary judgment, such a statement would be appropriate, but all they need to do at this stage is show plausibility. Based on the confirmation email and website, the Court should have concluded that other applicants plausibly had a chance to cure. That is all DigitalDesk and Mr. Gomm needed to survive the motion to dismiss.

## CONCLUSION

The District Court's decision on the motion to dismiss for lack of standing should be reversed.

Dated: September 30, 2024

Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

s/ *Skylar Croy*

Skylar Croy
 *Counsel of Record*
Richard M. Esenberg
Daniel P. Lennington
Skylar Croy
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org
Skylar@wil-law.org

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, I filed the foregoing
with the Clerk of Courts for the United States Court of Appeals for the
Fifth Circuit by using the appellate CM/ECF System; accordingly, the
brief was served via CM/ECF on all counsel who are registered CM/ECF
users.

Dated: September 30, 2024

s/ *Skylar Croy*
Skylar Croy

47

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,144 words, including approximately 666 words in the pictures, and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using the 2013 version of Microsoft Word in 14-point Century Schoolbook font.

Dated: September 30, 2024

/s *Skylar Croy*
Skylar Croy